

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

June 23, 1952

Hon. Coke R. Stevenson, Jr.       Opinion No. V-1471
Administrator
Texas Liquor Control Board        Re:  Legality of a Texas
Austin, Texas                          wholesale grocery
                                       concern's buying whis-
                                       key from a New York
                                       distributing corpora-
                                       tion for sale under
                                       customs bond to a
                                       foreign vessel without
                                       securing a Texas liquor
Dear Mr. Stevenson:                    license or permit.

          Your recent letter makes the following request for
an opinion:

          "Morris, Sewall and Company, Inc., is a
     Texas corporation with its principal office in
     Houston, Texas.  It owns Gordon, Sewall and Com-
     pany of Houston, Texas, a trade name.  Neither
     Morris, Sewall and Company, Inc., nor Gordon,
     Sewall and Company hold any kind or character
     of license or permit provided for by the Texas
     Liquor Control Act.

          "During the month of July, 1951, Gordon,
     Sewall and Company purchased 135 cases of as-
     sorted brands of whiskies from National Distil-
     lers Products Corporation, 120 Broadway, New
     York, New York.  This whiskey was delivered in
     customs bond about August 6, 1951, and since such
     time Gordon, Sewall and Company has sold a portion
     of the whiskey.  National Distillers Products Cor-
     poration holds a Non-resident Seller's Permit as
     provided for in Section 15 1/2 A of Article I of
     the Texas Liquor Control Act.  The liquor sold
     by Gordon, Sewall and Company was sold by it un-
     der customs bond to a ship flying a foreign flag
     at the Houston Port.

          "Section 4(a) of Article I of the Texas
     Liquor Control Act provides as follows: 'It shall
     be unlawful for any person to . . . sell, . . . .
     solicit orders for, take orders for, . . . . . any

liquor in any wet area without first having
procured a permit of the class required for
such privilege.'

"Houston is a wet area. It is our opinion
that Gordon, Sewall and Company violated the
above Section even though the whiskies were in
customs bond and were not 'within the boundar-
ies of the State of Texas' for certainly they
solicited an order for the whiskey or did 'take
an order' for the liquor sold. It is further
our opinion that the title to the liquor, al-
though it was in customs bond, passed from Na-
tional Distillers Products Corporation to Gordon,
Sewall and Company of Houston and that such com-
pany further violated the above quoted section
in that it sold a portion of the whiskey although
it did not actually have the physical possession
of the whiskey.

"Section 15 1/2 A (1) provides for a Non-
resident Seller's Permit and sets out the privi-
leges for the holder thereof. Said Paragraph (1)
of said section provides as follows: 'A Non-
resident Seller's Permit shall be required of all
distilleries . . . who sell liquor to the holders
of permits authorizing the importation of liquor
into Texas,regardless of whether such sales are
made within or without the State. Such permit
shall authorize the holder thereof to:

"'(a). Solicit or take orders for liquor
from only the holders of permits authorized to
import liquor into this State; . . .'

"It is further our opinion that the Non-
resident Seller, National Distillers Corporation,
in taking the order for the 135 cases of whiskey
from Gordon, Sewall and Company violated the above
quoted sections for the reason that Gordon, Sewall
and Company nor the parent corporation had any
permit or license which would authorize the impor-
tation of liquor into Texas.

"It is further provided in Paragraph (f) of
Paragraph (4) of said Section 15 1/2 A that '(4).
It shall be unlawful for any person holding a-
Non-resident Seller's Permit, or for any officer,
director, agent or employee thereof, . . . to:

"'(f). Solicit or take orders for liquor from any person not authorized to import liquor into Texas for the purpose of resale.'

". . . .

"Your valued opinion is requested on the following questions:

"A. Can the holder of a Non-resident Seller's Permit, issued by the Texas Liquor Control Board, take an order for liquor from a person or corporation which is not authorized to import the liquor into Texas for resale?

"B. Can a person who is not the holder of any kind or character of permit or license under the Texas Liquor Control Act sell, solicit an order for, or take an order for the sale of any liquor regardless of whether or not the liquor is in customs bond or 'not in Texas'?"

Your request is accompanied by an affidavit of an officer of the grocery concern which we assume to correctly state the facts applicable to your request. The affidavit recites:

"My name is J. F. Henderson. I am Vice President of Gordon, Sewall & Company, Post Office Box 2553, Houston, Texas. Gordon, Sewall & Company is a trade name only owned by Morris, Sewall & Co., Inc., a corporation existing under and by virtue of the laws of the State of Texas with its principal office in Houston, Texas. Morris, Sewall & Co., Inc., is a wholesale grocery company. Gordon, Sewall & Company is the wholesale marine division of the grocery company and supplies groceries to vessels at Gulf Coast ports. Gordon, Sewall & Company endeavors to handle a complete stock of ship stores and so represents to vessels stopping at Gulf Coast ports.

"During the month of July, 1950, the officials of Gordon, Sewall & Company concluded that in order to attract business to the several

Gulf Coast ports and particularly the port of Houston, it would be necessary for Gordon, Sewall & Company to handle a complete line of liquors. It was found, upon careful investigation, that all vessels, and particularly those flying foreign flags, purchased their entire bill of supplies from a marine supplier where liquors also could be purchased. It is customary for maritime contracts with foreign vessels to contain a provision that liquor will be served as a beverage to members of the crew, and for that reason it is required that foreign vessels purchase liquor. Prior to July, 1951, because vessels flying foreign flags could purchase liquor from a bonded warehouse, a great percentage of purchases made by foreign vessels was made at the port of New Orleans, which port for many years has had a bonded liquor warehouse. In an effort to capture a portion of such foreign trade and to encourage such vessels to do business in the State of Texas and Gulf Coast ports, Gordon, Sewell & Company decided to handle liquors.

"By order dated July 20, 1951, Gordon, Sewall & Company purchased from National Distillers Products Corporation, 120 Broadway, New York 5, New York, 135 cases of whiskies of several varieties and grades. This purchase was made by mail direct to National Distillers Products Corporation at the New York address given above. No person, firm or corporation in Texas was approached by Gordon, Sewall & Company in connection with the purchase of such liquor. National Distillers Products Corporation is a large liquor distributing corporation which handles liquor for consumption in the United States but which has a department known as its 'Export Department', which department handles orders for liquor destined for export only.

"National Distillers Products Corporation shipped the requested 135 cases of liquors by railroad under Custom Bond, by the terms of which arrangement the railroad was obligated to see that such liquor so sold was not received by an unauthorized person, that is, one not under Custom Bond himself. When said shipment of 135 cases of liquors was received in Houston, the same was held by the railroad and it notified the United States Customs House of the arrival of such shipment. The Customs

House issued a written release of such shipment to the railroad and such release was delivered by the Customs House to the railroad. A truck and driver, both under Custom Bond issued by the United States Customs House, secured said shipment of 135 cases of liquor from the railroad and delivered the same to a Custom Bond liquor warehouse at 102 San Jacinto, Houston, Texas. When the shipment of liquor arrived at such address, a representative of the United States Customs House carefully checked each case of liquor, unlocked the warehouse, and placed said liquor in such warehouse.

"Such warehouse is located on property owned by Gordon, Sewall & Company but was built by Gordon, Sewall & Company according to plans and specifications prescribed by the United States Customs House and under the supervision of a representative of the United States Customs House. Gordon, Sewall & Company has no key to such warehouse, the only such key being held exclusively by a representative of United States Customs House.

"Since receipt of such liquor on or about August 6, 1951, Gordon, Sewall & Company has sold 20 cases. At the times sales have been made and prior thereto, Gordon, Sewall & Company notified the United States Customs House of a sale of such liquor. The Customs House sends a representative to the warehouse, and such representative unlocks the same, checks out the liquor, ascertains that it is loaded on a Custom Bonded truck operated by a Custom Bonded driver, and such representative accompanies such truckload of liquor to the vessel at the port. The representative of the Customs House then checks the liquor aboard ship and seals it. Gordon, Sewall & Company pays the Customs House representative on a per diem basis. No employee of Gordon, Sewall & Company, except an employee under Custom Bond, ever handles the liquor, and it is handled only at such times and places as directed by a representative of the United States Customs House and handled only under his actual, personal supervision. Gordon, Sewall & Company cannot move liquor outside of Harris County, Texas.

The power of the State to regulate the passage of liquor through its territory in commerce was expressly affirmed in Cartlidge v. Rainey, 168 F.2d 841 (C.A. 5th Cir.,1948, cert. den. 335 U.S. 885) and authorities there cited. Whether the State may prohibit such passage is a moot question since none of the statutes to which you refer attempt to prohibit such traffic. They are regulatory measures designed merely to limit the prosecution of the liquor business in Texas to persons authorized by Texas law to engage therein. Certainly the State may regulate the handling of liquor in the territory of Texas regardless of whether its ultimate intended destination is outside of Texas. Otherwise the State would be hamstrung by an immunity from regulation based solely on the nebulous consequence of an asserted intention to move the product to another jurisdiction. Nor is the State required to rely on the Federal Government to see that none of the liquor is so handled within its territory as to thwart its own policy in regard to domestic traffic.

In the instant situation the methods prescribed by the Treasury Department for an accounting for the shipments passing through Texas have no direct relation to the domestic policy of the State in regard to the liquor traffic. The sole purpose of such regulations is to see that the Federal tax is paid. The regulations are designed to guarantee that such liquor is not diverted into domestic channels under conditions as to which Federal taxes would be due but not paid. The Federal statutes and regulations offer only incidental protection to the State's local liquor policy. The consequences of violation of the Federal internal revenue regulations are not intended as a vindication of the State public law and have no relation to the policy of the State as to the penalties imposed on offenders of the local policy.

As a means of regulating the traffic in liquor in Texas the State has prohibited the physical handling of liquor for commercial purposes within its territory except by licensed persons. Not only is the physical handling limited to such persons, but activities in Texas incidental thereto are also limited to licensed persons. Your questions relate primarily to the requirement of a license for acts involving something less than actual physical possession of the liquor in Texas territory. The licenses are required of those who solicit and take orders for liquor in the territory of Texas. Certainly the persons affected are subject to the regulatory jurisdiction of the State. The statutes are clear and unambiguous and we are impelled to construe them according to their terms.

You are therefore advised that the holder of a non-resident seller's permit may not take an order for the shipment of liquor into Texas from a person or corporation not authorized to import liquor into Texas for resale.

You are also advised that a person who is not the holder of any kind or character of permit or license under the Texas Liquor Control Act cannot sell, solicit an order for, or take an order for the sale of any liquor located in Texas, although the liquor is under the supervision of the United States Treasury Department for the purpose of preventing the evasion of Federal tax laws.

The wholesaler concerned has submitted a brief in support of the proposition that the State has no power to regulate or tax liquor which is in the "stream" of foreign commerce, and cites McGoldrick v. Gulf Oil Corp., 309 U.S. 414 (1939), and During v. Valente, 267 App. Div. 383, 46 N.Y.S. 385. The McGoldrick case did not involve liquor, as to which the 21st Amendment to the Constitution enlarged the powers of the States to regulate commerce therein. Nor are the regulatory provisions about which you inquire an attempt to tax the liquor or its sale; nor are they in conflict with or inimical to the Federal regulations under which the liquor is transported, stored, and sold. In the McGoldrick case an attempt was made to tax the sale of oil to foreign-bound ships, contrary to a Congressional regulation in effect exempting the oil from taxation.

The During case places a more restricted construction on the 21st Amendment than that established by later decisions. See Cartlidge v. Rainey, supra. The liquor, the sale of which it was contended could be made only under a New York liquor permit, was located in a so-called "Foreign-Trade Zone" established under the laws of the United States dealing with regulation of foreign commerce. New York, in effect, yielded its jurisdiction over such zone by authorizing the City of New York to apply for its establishment under Federal control. No such zone is here involved, nor has such concession been made by Texas. Merely because the liquor here involved was handled in such a way as to be consistent with Federal rules designed to protect the Federal revenues gives it no immunity from State regulation, nor immunity to those who own it from the State requirement of a license to deal in liquors.

## SUMMARY

The holder of a Non-resident Seller's Permit under the Texas Liquor Control Act may not lawfully take an order for the shipment of liquor into Texas under "customs bond" from a person or corporation not authorized to import liquor into Texas for resale, although such liquor is intended solely for foreign commerce.

A person who is not the holder of any kind of permit under the Texas Liquor Control Act may not lawfully sell, solicit an order for, or take an order for the sale of liquor located in Texas although the liquor is under the supervision of United States Treasury officials for the purpose of preventing evasion of Federal tax laws and is intended for sale only in foreign commerce.

APPROVED:

Mary K. Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

NMc/rt

Yours very truly,

PRICE DANIEL
Attorney General

By _____
    Assistant